IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LOUIS LEONA STAUNTON, JR., #A-0110394, | Civ. No. 19-00408 JAO-RT |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE GRANTED TO AMEND |
| vs. | |
| WARDEN THOMAS CORE CIVIC OF AMERICA S.C.C., et al., | |
| Defendants. | |

**ORDER DISMISSING FIRST AMENDED COMPLAINT
WITH LEAVE GRANTED TO AMEND**

Before the Court is pro se Plaintiff Louis Leona Staunton, Jr.'s, first amended prisoner civil rights complaint ("FAC") brought pursuant to 42 U.S.C. § 1983. Staunton alleges that Defendants Saguaro Correctional Center ("SCC")[1] Warden Thomas, the Halawa Correctional Facility ("HCF") and its warden, Scott Harrington, and Trans Core of America[2] (collectively, "Defendants"), violated his

---

[1] SCC is a private prison located in Eloy, Arizona.

[2] Trans Core of America ("Trans Core") is a private prisoner transportation agency. *See* https://transcor.com.

civil rights during his transfer from SCC to Hawaiʻi, when he fell from a bus upon arrival at HCF.

For the following reasons, the FAC is DISMISSED for failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims alleged against SCC Warden Thomas, HCF, and Trans Core of America are DISMISSED with prejudice. All other claims are DISMISSED with leave to amend on or before December 20, 2019.

## I. STATUTORY SCREENING

The court is required to screen all prisoner pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.* (citation omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard.  *Id.* at 678-79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

To state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it requires factual allegations sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  "All that is required is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'"

*Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. If a claim or complaint cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**

In his original Complaint, Staunton alleged that his legs became entangled with a poorly designed seat restraint as he exited a bus when he arrived at HCF after his transfer from Arizona. *See* Compl., ECF No. 1. Staunton was unable to break his fall, apparently because he was in restraints, and says that he was substantially injured. Staunton was immediately taken to the Pali Momi Hospital emergency room, where he was treated for his injuries. Staunton asserted this incident was a "threat to safety," and involved the denial of "medical care," but he failed to state when it occurred or what Defendants specifically did or failed to do that violated his constitutional rights. *See id.*

On August 12, 2019, the Court dismissed Staunton's Complaint for failure to state a colorable claim for relief against any Defendant. *See* Order, ECF No. 4. Staunton was given leave to amend to cure the deficiencies in his pleading, but was cautioned that an amended pleading "must be complete in itself without reference to any prior pleading." *Id.* at 12.

On September 5, 2019, Staunton filed the FAC. ECF No. 5. Although the FAC is replete with legal arguments and conclusions, its factual allegations remain sparse and it can only be understood with reference to the original Complaint. Staunton again alleges that he fell exiting a Trans Core bus when he arrived at HCF. Staunton states that this was an "unforseen safety issue," *id.* at 5,[3] "due to the flawed design in the seatbelt restraints." *Id.* at 12. He says it is "a possibility that the straps was pre-tangled and twisted and overlooked, thinking it would stretch out and right itself." *Id.* at 16. He suggests that he was "[p]ossibly rushed out of [the] bus by S.O.R.T. team members" and was "[u]nable to break his fall . . . with no assistance from the nearest S.O.R.T. team member." *Id.* at 12-13. Staunton explains that he was denied adequate medical care because "Pali Momi

---

[3] The Court refers to the pagination assigned to filed documents by the Federal Judiciary's electronic case management system (CM/ECF).

Emergency Doctors order pain medication such as percocets, [or] vicodin where as H.C.F. medical care can only allow Tylenol with Cod[e]ine every 6 hrs." *Id.* at 21.

Staunton seeks injunctive relief, compensatory, and punitive damages.

### III. **DISCUSSION**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 also requires an actual connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). A plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights.

6

## A. Eleventh Amendment Immunity

Staunton names Defendants in their official capacities only. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted). An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (emphasis omitted).

Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, Civ. No. 12-00137 HG-BMK, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

First, neither HCF nor Trans Core, the transportation company that operated the bus, are considered "persons" within the meaning of § 1983, and Staunton's vague claims against them are DISMISSED with prejudice.

Second, Staunton's claims for damages against Wardens Thomas and Harrington as named in their official capacities fail to state a claim and are DISMISSED with prejudice.

Finally, Staunton's transfer from SCC moots any claims for prospective injunctive or declaratory relief that he might have stemming from his incarceration there, and he does not allege an ongoing violation of federal law regarding his claims that allegedly occurred at HCF. *See Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991)). Thus, Staunton fails to state a claim for damages *or* injunctive relief against all Defendants in their official capacities, and these claims are DISMISSED with prejudice.

## C. Eighth Amendment

Even liberally construing Staunton's allegations as naming Thomas and Harrington in their individual capacities, he still fails to state a colorable claim for relief against them, because he fails to show their personal involvement in his claims or allege any facts that show they violated the Eighth Amendment pursuant

8

to his accidental fall from the bus or the alleged denial of adequate medical care thereafter.

To prove a violation of the Eighth Amendment a plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Deliberate indifference requires a showing that "prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety" and that there was no "'reasonable' justification for the deprivation, in spite of that risk." *Id.* (footnotes omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)). Officials may be aware of the risk because it is obvious. *See id.* at 1152. Prison officials must take reasonable measures to guarantee the safety of the inmates. Deliberate indifference requires a state of mind derived from criminal recklessness; that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).

"If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk."

*Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (brackets omitted) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1. *Supervisory Liability*

Staunton again names Thomas and Harrington based solely on their positions as Wardens at SCC and HCF. As the Court informed him, their "general responsibility for supervising the operations of a prison is insufficient to establish [their] personal involvement" in his claims. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (citation omitted). Staunton alleges nothing showing that Thomas or Harrington knew that the bus's allegedly faulty seatbelt restraints posed an excessive threat to his safety, or that they had any connection to the alleged denial of medical care that he received thereafter.

To state a claim under § 1983, an "inmate[] must show that each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (footnote omitted). That is, a prison "official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"

*Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)). A supervisor is liable "so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018)). A "causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (alterations in original) (internal quotation marks and citations omitted). A supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

        *a.*      *Claims against SCC Warden Thomas*

Staunton again fails to explain how SCC Warden Thomas is connected to or responsible for his fall from a bus in Hawaiʻi. Staunton was clearly not under Warden Thomas' control or custody when he arrived in Hawaiʻi. He alleges no

facts showing that Thomas subjectively knew of a threat to his safety posed by poorly designed restraints on the Trans Core bus, and deliberately failed to act on that threat. Nor does he explain how Thomas had any involvement in his medical care in Hawaiʻi after the fall. Staunton's claims against Thomas simply strain credulity and they are DISMISSED with prejudice, as further amendment is futile.

*b. Failure to Protect Claims against HCF Warden Harrington*

Staunton's claims against Warden Harrington regarding his fall from the bus again fail to state a claim for relief. First, Staunton does not allege *when* this incident happened, which is necessary so that Harrington can determine (1) whether the claim is timely; (2) who was involved in or has knowledge about the incident; and (3) whether Staunton fully grieved the incident before bring suit as required by 42 U.S.C. § 1997(e).[4]

Second, requiring an inmate to descend stairs while he is wearing restraints, without more, does not equate to a civil rights violation. *See, e.g.*, *Jones v. Meddly*, Case No. 1:17-cv-00109-SAB (PC), 2019 WL 3302358, at *8 (E.D. Cal. July 23, 2019) (granting summary judgment on inmate's deliberate indifference

---

[4] Staunton is *not* required to plead or prove that he exhausted his claims in his pleading. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). He must, however, allege sufficient facts to allow a defendant to adequately respond and formulate a defense. *See Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8.

claim that he fell descending metal steps while wearing restraints); *Gray v. Warm Springs Corr. Ctr.*, No. 2:13-cv-00901-RCJ-VCF, 2013 WL 4774632, at *4 (D. Nev. Sept. 4, 2013) (dismissing prisoner's claim because he "ple[d] no facts indicating that any defendant was aware of an excessive risk that Plaintiff would fall down the stairs, e.g., based on past incidents," and noting that "even though the risk of tripping naturally increases" when an inmate is shackled, it is not deliberate indifference); *Denton v. Bala*, No. C 13-1374 SI (pr), 2013 WL 2931897, at *3 (N.D. Cal. June 13, 2013) ("[L]arge numbers of people regularly climb and descend stairs without holding arm-rails, and large numbers of people regularly climb and descend stairs with their arms restricted (e.g., by holding packages, children, etc.) – all without falling," and therefore, "requiring the handcuffed inmate to descend a flight of stairs did not present an objectively serious condition required for an Eighth Amendment claim."); *Curry v. Tilton*, No. C-07-0775 EMC (pr), 2012 WL 967062, at *14 (N.D. Cal. Mar. 21, 2012) ("Requiring an inmate to descend stairs while in waist restraints does not deny him the minimal civilized measure of life's necessities.").

Staunton alleges nothing showing Warden Harrington's personal involvement in his fall from the bus. He does not assert that Harrington was aware of the allegedly faulty design of the seatbelt restraints and therefore knew that they

13

posed an excessive risk of harm to him or other inmates, and despite such knowledge did nothing to prevent that risk. Staunton does not allege that other inmates had fallen when exiting the bus, because of the seatbelts' faulty design, or for any other reason, that might have alerted Harrington to such danger.

Although Staunton suggests that he *may* have been hurried from the bus, he does not allege that Harrington was personally aware of this, or that he directed the Trans Core "S.O.R.T. team" to hurry inmates off of the bus. He does not explain how any HCF employee's training was deficient, nor allege a policy that Harrington implemented that subjected inmates to an excessive risk of serious harm when they exited Trans Core's buses. Staunton again fails to state a claim showing that Warden Harrington was deliberately indifferent to his safety and this claim is DISMISSED with leave to amend.

### 2. *Alleged Denial of Medical Care*

To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Staunton states that he was "immediately transported to the Pali Momi Hospital emergency for stitches to treat the injury [he] sustained from that fall. (shots given for numbing)." FAC, ECF No. 5, at 13. He now alleges that his medical care claim is based on his assertion that Pali Momi doctors would have prescribed him percocet or vicodin, but the HCF medical unit only allows Tylenol with codeine.

First, Staunton again alleges *no* facts showing Harrington's personal involvement in his medical care or the type of medication that he was prescribed by HCF physicians.

Second, even accepting that Pali Momi physicians *may* have prescribed Staunton different medication than what he later received at HCF, and this is not explicit, a disagreement between Staunton and HCF's medical providers, or between the Pali Momi doctors and HCF doctors regarding the medication Staunton required does not state a claim under § 1983. *See Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014). Rather, a plaintiff "must show that the course of treatment the [HCF] doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [Staunton's] health." *Snow*, 681 F.3d at 988

(internal quotation marks and citation omitted). Staunton alleges no facts showing that the HCF medical unit failed to respond to his pain, or that they prescribed him Tylenol with codeine knowing that it posed an excessive risk to his health or was ineffective for his condition.

Staunton's claim that Warden Harrington, or any individual at HCF, denied him adequate medical care with deliberate indifference to his health or safety fails to state a claim and is again DISMISSED with leave granted to amend.

## IV. **LEAVE TO AMEND**

Because it is possible that Staunton can plausibly allege sufficient facts to show that he was treated with deliberate indifference by *someone* when he arrived at HCF and fell from the bus, and in the provision of medical care thereafter, he may file an amended pleading correcting the deficiencies in those claims that are dismissed without prejudice on or before December 20, 2019.

Staunton may not expand his claims beyond those already alleged or add new claims, without explaining how any new claims relate to the claims alleged in the original Complaint. The amended pleading must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires that an amended complaint be complete in itself without reference to any prior pleading. An amended complaint must be

short and plain, yet it must provide sufficient facts to alert the defendant to its allegations and to formulate a reply. It must also be submitted on the Court's prisoner civil rights form.

Staunton is notified that an amended complaint supersedes the preceding complaint; it must stand on its own without reference to any previous pleading. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). If Staunton fails to timely file an amended complaint that cures the deficiencies in his claims that are noted in this Order, this action may be automatically dismissed and may count as a "strike" under 28 U.S.C. § 1915(g).[5]

---

[5] 28 U.S.C. § 1915(g) bars a civil action by a prisoner proceeding in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## V. CONCLUSION

(1) The First Amended Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1). Claims alleged against Warden Thomas, Trans Core of America, and the Halawa Correctional Facility are DISMISSED with prejudice. Official capacity claims that seek damages against Warden Harrington, and claims seeking prospective injunctive relief are DISMISSED with prejudice. All other claims are DISMISSED with leave granted to amend.

(2) Staunton may file an amended pleading on or before December 20, 2019. Failure to timely file an amended pleading that cures the deficiencies discussed herein may result in dismissal of this action without further notice and result in a strike pursuant to 28 U.S.C. § 1915(g).

IN THE ALTERNATIVE, Staunton may voluntarily dismiss this action in writing on or before December 20, 2019.

//

//

//

//

(3) The Clerk is DIRECTED to send Staunton a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 15, 2019.



Jill A. Otake
United States District Judge

*Staunton v.Dep't of Public Safety, et al.*, No. 1:19 cv 00408 JAO RT; Scrng '19 Staunton19 408 jao (FAC 8A tripfrom bus)